

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WAYLAND TERRY GREEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:17-CV-778-A |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION**
**and**
**ORDER**

Before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Wayland Terry Green, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), respondent. After having considered the pleadings and relief sought by petitioner, the court has concluded that the petition should be dismissed as time-barred.

**I.  Factual and Procedural History**

On March 19, 2013, in the 355th District Court, Hood County, Texas, Case No. CR12187, a jury found petitioner guilty of felony driving while intoxicated (DWI), found the sentence-enhancement allegations in the indictment true, and assessed his punishment at 99 years' imprisonment. (Clerk's R. 35, doc. 11-11.) Petitioner appealed, but the state appellate court affirmed the

trial court's judgment and, on July 27, 2005, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Docket Sheet 1-2.) Petitioner filed an untimely motion for reconsideration to which the Texas Court of Criminal Appeals took no action. See TEXAS JUDICIAL BRANCH, CASE INFORMATION, http://www.search.txcourts.gov. On December 26, 2016, petitioner filed a state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order.[1] (SHR02[2] 22-23 & Action Taken.) This federal petition challenging his conviction was filed on September 18, 2017.[3] (Pet. 10.)

The state appellate court summarized the state's evidence as follows:

> Nicholas Foster, a security officer working for a private security company at the gated Indian Harbor subdivision in Hood County, testified that at roughly 12:45 a.m. on February 26, 2012, he and fellow security officer Tad Taylor were "running radar" when they observed [petitioner] driving his truck thirteen miles an hour over the posted speed limit. Foster said that under the homeowners' association's rules, he is allowed to initiate traffic stops and write citations

---

[1] A state habeas application filed by a prisoner is deemed filed when placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). Petitioner's state application does not, however, provide the date he placed it in the prison mailing system. Thus, for purposes of this opinion, the application is deemed filed on the date the "Inmate's Declaration" was signed by petitioner.

[2] "SHR02" refers to the record of petitioner's state habeas proceeding in WR-82,695-02.

[3] A federal habeas petition filed by a prisoner is also deemed filed when placed in the prison mailing system. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

for traffic infractions. Thus, Foster initiated a traffic stop of [petitioner]'s vehicle.

Upon stopping [petitioner], Foster requested [petitioner]'s driver's license and insurance card. [Petitioner] obliged. As Foster returned to his security vehicle to write [petitioner] a ticket, [petitioner] exited his vehicle, approached Foster, and demanded that [Foster] return his license and insurance card. Foster described [petitioner]'s behavior as "confrontational" and "erratic." Foster also said that [petitioner] possessed "slurred" speech. All of this led Foster to surmise that [petitioner] was intoxicated. Foster said that this encounter spanned a few minutes. After Foster refused to return [petitioner]'s license and insurance card, [petitioner] cursed at Foster, got back in his car, declared "I'm leaving," and then drove off.

Foster and Taylor followed him in their security vehicle to a residence inside the gated community. Foster and Taylor parked outside the residence and called the Sheriff's department for assistance. Roughly twenty minutes after Foster pulled [petitioner] over, officers Joshua Lane and Paul Lilly responded to their call. Foster provided Lilly with a written statement of what he had observed.

Taylor testified that he remained in the security vehicle as Foster retrieved [petitioner]'s license and insurance card. According to Taylor, after Foster returned to the security vehicle, [petitioner] got out of his truck, argued with Foster, then got back in his vehicle, and left. By Taylor's account, he had recorded in his notes that they contacted law officials because "[petitioner was] intoxicated, driving on the roadways, [and] possibly could be endangering traffic." Taylor also reported that [petitioner] "was uncooperative" and that he had "dr[iven] off without his license." Like Foster, Taylor testified that he observed [petitioner] go into the local residence and that he did not see [petitioner] again until the two officers arrived and [petitioner] came out of the residence to speak with one of them. Taylor also gave his written statement to the officers.

Hood County Sheriff's Office's Patrol Deputy Lane testified that he responded to a call that Indian

3

Harbor's security had stopped an intoxicated driver but that the driver had driven off and entered an Indian Harbor residence. Lane said that he arrived at the residence at 1:03 a.m., and after speaking with Foster and Taylor to confirm that he was at the correct residence, he encountered the residence's owner, Lonnie Humphrey. Humphrey informed Lane that [petitioner] was inside. Humphrey and Lane approached the residence, Humphrey called for [petitioner] to come outside, and he did. Lane said that as he spoke with [petitioner], he observed that Green appeared "drowsy" and exhibited "slurred speech." Based on these observations, Lane testified that he believed [petitioner] to be intoxicated. Lane then observed that [petitioner] possessed an odor of alcoholic beverage about his person and that he gave contradicting statements regarding having driven while intoxicated as the security officers stopped him for speeding.

By Lane's account, [petitioner] told him that he left a bar and attempted to proceed to Humphrey's residence when Taylor and Foster stopped him for speeding. [Petitioner] told Lane that the security officers had detained him for "roughly 45 minutes, so he drove off." When Lane inquired of [petitioner] how much he had to drink that night, [petitioner] responded, "one or two beers." Lane testified that [petitioner] told him the last drink he had that night was prior to driving to Indian Harbor. Although [petitioner] said he was not intoxicated, [petitioner] revealed to Lane that the reason he had left the bar and proceeded to Humphrey's house rather than his own was because "he knew he had too much to drink and . . . he wanted to get to [Humphrey's] house before he felt that he was [too] intoxicated [to drive]." [Petitioner] refused Lane's request to participate in field-sobriety tests, declaring that he did not need to because he was on private property, but he again reiterated that "he did not need to be driving all the way to his house, so that's why he came to [Humphrey's house]." Lane said that at that time he placed [petitioner] under arrest for driving while intoxicated. After placing him under arrest, Lane had both Taylor and Foster identify [petitioner] as the person they had stopped earlier.

After running [petitioner]'s information, Lane determined that [petitioner] had at least two prior DWI offenses on his record. Lane took [petitioner] to the

4

> Hood County Jail, where he read [petitioner] the
> statutory DWI warnings, including the provision that
> refusal to submit to a breath or blood test would cause
> [petitioner]'s license to be suspended, and asked if he
> would consent to a breath test. [Petitioner] refused
> the test. Video footage of this exchange at the jail,
> including the statutory reading and [petitioner]'s
> refusal to submit to testing, was played for the jury.
> Following his refusal, Lane took [petitioner] to the
> hospital to perform a blood draw. Because [petitioner]
> had continued to profess that he would refuse to give a
> blood sample, Lane requested that additional units meet
> him at the hospital. Lane eventually obtained
> [petitioner]'s blood sample at 2:19 a.m. [Petitioner]'s
> blood-alcohol level registered a 0.198 grams of alcohol
> per 100 milliliters of blood, more than twice the legal
> limit. From there, Lane transported [petitioner] back
> to the jail.

(Mem. Op. 2-6, doc. 11-3.)

## II. Issues

In four grounds for relief, petitioner claims that he is actually innocent of committing the charged offense; his warrantless arrest was made without good faith; his blood was drawn without his consent and without a warrant; and he received ineffective assistance of trial counsel. (Pet. 6-7, doc. 1.) Respondent asserts that the petition is untimely under the federal statute of limitations. (Resp't's Preliminary Answer 4-12, doc. 12.)

## III. Statute of Limitations

Title 28, United States Code, § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners. Section 2244(d) provides:

(1) A 1-year period of limitations shall apply to

5

an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of—

>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>     (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Because petitioner's claims relate to his 2013 conviction, subsection (A) is applicable. Under that provision, the limitations period began to run on the date on which the judgment of conviction became final by the expiration of the time for seeking direct review. Thus, petitioner's conviction became final upon expiration of the time that he had for filing a petition for writ of certiorari in the United States Supreme Court on February

6

3, 2015. *See Jimenez v. Quarterman,* 565 U.S. 134, 119-20 (2009); Sup. Ct. R. 13. Accordingly, the statute of limitations began to run the following day and closed one year later on February 3, 2016, absent any tolling.

Tolling of the limitations period may be appropriate under the statutory provision in § 2244(d)(2) and/or as a matter of equity. Petitioner's state habeas application filed on December 26, 2016, after limitations had already expired, did not operate to toll the limitations period under the statutory provision. *Moore v. Cain,* 298 F.3d 361, 366-67 (5th Cir. 2002); *Scott v. Johnson,* 227 F.3d 260, 263 (5th Cir. 2000). Nor has petitioner demonstrated that equitable tolling is justified.

For equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way'" and prevented him from filing a timely petition or he can make a "convincing showing" that he is actually innocent of the crime for which he was convicted (the miscarriage-of-justice exception). *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013); *Holland v. Florida,* 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408 (2005)). Petitioner provides no explanation for his delay in seeking postconviction relief and, instead, claims that he is actually innocent of the offense under the miscarriage-of-justice exception.

7

To use actual innocence as a "gateway" to overcome the expiration of the statute of limitations, a petitioner is required to produce "new reliable evidence" that was not presented at trial and that is sufficient to persuade the district court that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *McQuiggin,* 569 U.S. at 399 (quoting *Schup v. Delo,* 513 U.S. 298, 327 (1995)). Petitioner makes no such showing. He asserts that he has diligently attempted to receive "additional and/or withheld evidence, that defense counsel neglected to get" and that since pursuing postconviction habeas relief he has received the Indian Harbor Community's bi-laws and rules and been diagnosed with bi-polar disorder. (Pet'r's Traverse 3, doc. 15.) However, he does not indicate the nature of any "additional and/or withheld evidence" or explain how any such evidence, the subdivision's bi-laws and rules, and/or his bi-polar disorder prove his innocence.

Accordingly, petitioner's federal petition was due on or before February 3, 2016. His petition, filed on September 18, 2017, is therefore untimely.

For the reasons discussed, it is ORDERED that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, dismissed as time-barred. Petitioner has not made a showing that reasonable jurists would question this

8

court's procedural ruling. Therefore, it is further ORDERED that a certificate of appealability be, and is hereby, denied.

SIGNED November 28, 2018.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE